**FRENCH AMERICAN BANKING CORPORATION, Plaintiff,**

v.

**FLOTA MERCANTE GRANCOLOMBIA-NA, S.A., and Fireman's Fund Insurance Company, Defendants.**

No. 83 Civ. 5095 (KTD).

United States District Court, S.D. New York.

Aug. 23, 1987.

See also 609 F.Supp. 1352.

Healy & Baillie (Jack A. Greenbaum, Nancy Diamond, of counsel), Cleary, Gottlieb, Steen & Hamilton, New York City, for plaintiff.

Hendler, Murray & Mait, P.C., New York City (Michael Maillet, Joel M. Ross, of counsel), for defendant Fireman's Fund Ins. Co.

Fennell & Minkoff, New York City (Darrell K. Fennell, Ronald C. Minkoff, John G. Connor, of counsel), for defendant Flota Mercante Grancolombiana, S.A.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendant Flota Mercante Grancolombiana, S.A. ("Flota") moves pursuant to Fed. R.Civ.P. 56 for partial summary judgment dismissing plaintiff French American Banking Corporation's ("FABC's") first, third, fourth, fifth and sixth causes of action, and defendant Fireman's Fund Insurance Company's ("Fireman's Fund's") first cause of action in its crossclaims. FABC and Fireman's Fund oppose Flota's motion. Fireman's Fund also moves *in limine,* pursuant to suggestion by Magistrate Naomi Reice Buchwald, for a determination of the admissibility of certain evidence allegedly relevant to Flota's involvement preparing the fraudulent bills of lading. Flota opposes Fireman's Fund's motion. For the reasons discussed below, Flota's motion for partial summary judgment is denied and Fireman's Fund's motion *in limine* is denied in part.

## FACTS

FABC made several loans to Colombian Coffee Company ("Colombian Coffee") which were secured by Flota bills of lading. When Colombian Coffee defaulted on the loans, Flota's bills of lading were discovered to be fraudulent. Thereafter, FABC commenced this action alleging that Flota is liable for the bills of lading issued by it or on its behalf. In addition, FABC alleges that because the bills of lading were either forged or counterfeit, Fireman's Fund is liable on its Banker's Blanket Bond issued to FABC. Fireman's Fund has crossclaimed against Flota. I have detailed these claims, the identity of the parties, and the relationships between the parties and other relevant participants in this matter in three prior opinions dated May 24, 1984, April 29, 1985, and April 8, 1987. Familiarity with my prior opinions is assumed and such information will be repeated only as necessary here.

During the pendency of this action four principals of Colombian Coffee and its related companies, Victor Duque, Alberto Duque ("the Duques"), Fernando Bautista, and Camilo Bautista ("the Bautistas"), were convicted in the Southern District of Florida of, among other substantive crimes, participation in a conspiracy to fraudulently obtain money from a number of lending institutions, in part, by negotiating and transferring false bills of lading ("the conspiracy"). The charged criminal conspiracy included actions which underlie FABC's claims here. *See* Notice of Motion and Affidavit in Support of Defendant Fireman's Fund Insurance Company's Motion *In Limine* ("Fireman's Fund Mo."), Exh. F–H.

No principal or agent of Flota was named as a defendant in the criminal conspiracy charge. However, Fireman's Fund now argues that there is both circumstantial and direct evidence, discovered in the course of the criminal action and in preparation for this action, which connects Flota to the fraud. The circumstantial evidence linking Flota to the conspiracy includes evidence that Flota was the only carrier whose bills of lading were used in the course of the conspiracy; that the fraudulent Flota bills were apparently on authentic Flota forms; and, that although the stamps used by Flota to validate bills of lading and indicate that Flota had received the cargo listed on the bill were accessible to only a few Flota employees, the fraudulent Flota bills were apparently stamped in the same manner as a valid Flota bill.

The direct evidence which has been discovered tends to show that Flota's port agent in Buenaventura, Colombia, Ramon Abadia, has some connection to the conspiracy. This evidence is: (1) a one page document ("the ledger sheet"), found among the papers of Colombian Coffee maintained by the attorneys for the Creditors Committee of Colombian Coffee, which purports to be an excerpt of a statement of account of Transportes de Carga Duque, S.A. ("Transportes") and reflects payments made by check to Abadia in December, 1982; (2) the declaration of Guillermo Sepulveda, the Duques' export manager, which purports to identify the ledger sheet as a valid record of the Duques and declares that Sepulveda issued the reflected payment orders to Abadia, and (3) the deposition testimony of confessed co-conspirators Fernando Bautista and Camilo Bautista who each recall overheard and direct conversations of the Duques and of Guillermo Sepulveda in which Abadia was named as the conspiracy's source for blank and duplicate Flota bills of lading. *See,* respectively, Affidavit of Michael Maillet in Opposition to Flota's Motion for Summary Judgment: ¶ 6–7, Exh A–B, Exh. D–E. This evidence is the subject of Fireman's Fund motion *in limine.*

## DISCUSSION

### A. Fireman's Fund Motion *In Limine*

#### 1. *The Ledger Sheet*

Fireman's Fund argues that the ledger sheet is admissable hearsay under Fed.R. Evid. 804(b)(5), 803(24), 804(b)(3), and 801(d)(2)(E). However, the argument under each of these rules requires that the document first be authenticated which Fireman's Fund has not done.

■ Under Fed.R.Evid. 901(a) "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fireman's Fund claims that the ledger sheet here is sufficiently identified because it "is

an unambiguous and explicit report of contemporaneous events as to which there was no motive or reason to dissemble." Defendant Fireman's Fund Insurance Company's Memorandum of Law In Support of Motion in Limine ("Fireman's Fund Mem."), at 24.

Fireman's Fund argues that the circumstances surrounding the discovery of the ledger sheet among the records of Colombian Coffee and the distinctive contents of the ledger sheet contain guarantees of trustworthiness sufficient for admissability under Fed.R.Evid. 901. However, the creation of the ledger sheet by Transportes in Colombia is relevant to its trustworthiness. The document is being offered to prove the truth of the assertion that checks were issued to Abadia by Transportes Duque in December 1982. Fireman's Fund Mem., at 16–18. Without any evidence regarding who prepared the ledger sheet, who signed it, when it was prepared, the source it was excerpted from, or the purpose for its preparation, and in light of the fact that the documents both preceding and following the ledger sheet among the Colombian Coffee papers maintained by Davis Polk are missing[1], there is insufficient evidence to support a finding of authentication. The ledger sheet does not contain sufficiently uncommon information to support trustworthiness and admissibility.

■ The Sepulveda statement, putting aside the issues of whether it is a sworn statement and whether it has been recanted, is likewise insufficient on its face to authenticate the ledger sheet. Sepulveda certifies that the ledger sheet is "a true and authentic copy from the files of [Transportes] which "was drawn up in the ordinary course of business." Fireman's Fund Mo., Exh. B. However, Sepulveda did not sign the document, does not identify the preparer of or the signature on the document, does not identify the date of preparation, and does not indicate how he knows that this particular document, discovered in the files of Colombian Coffee, is a correct copy or an excerpt of a genuine document.

---

1. There are gaps in the sequence of the control numbers on the documents preceding and following the ledger sheet. Reply Affidavit of Joel M. Ross, Exh. B.

In fact, Sepulveda provides no information to explain how or why this document was among Colombian Coffee's records rather than its expected place among Transportes' records. *Cf. Dartez v. Fibreboard Corp.,* 765 F.2d 456, 466–67 (5th Cir.1985); *Burgess v. Premier Corp.,* 727 F.2d 826, 835 (9th Cir.1984). The Sepulveda statement does not provide sufficient evidence to support a finding of the ledger sheet's trustworthiness and authentication.

■ Finally, even if the ledger sheet could somehow be authenticated, it is not admissible under Fed.R.Evid. 804(b)(5) or 803(23). These rules require that proffered evidence have circumstantial guarantees of trustworthiness and that the evidence be more probative than any other evidence obtainable through reasonable efforts. Checks issued by Transportes and endorsed by Abadia would be far more probative and, if the ledger sheet is accurate, such checks or bank records of payment on such checks likely exist. As pointed out by Flota, Fireman's Fund has yet to even attempt to use letters rogatory to discover whether such checks exist. Fireman's Fund argues that letters rogatory are too time-consuming and therefore are not a reasonable procedure. However, as I pointed out in my 1984 opinion in this case, this argument "borders on being frivolous." Memorandum and Order of May 24, 1984, at 8 [2].

### 2. *The Sepulveda Declaration*

This declaration, attached to a copy of the ledger sheet discussed above "is proffered ... for a limited purpose: to identify the ledger sheet and to corroborate that Abadia was paid." Fireman's Fund Mem., at 18. Because the ledger sheet is inadmissible, I need not address Fireman's Fund's arguments regarding the former purpose.

■ To the extent that the declaration is offered as evidence that Sepulveda personally issued payment orders to Abadia, it is admissible under Fed.R.Evid. 804(b)(5). Sepulveda, a Colombian national residing in Colombia, is unavailable within the meaning of Fed.R.Evid. 804(a)(5). As required by Rule 804(b)(5): (1) there are circumstantial guarantees of trustworthiness because it is not disputed that he signed this declaration with knowledge of its contents; (2) the fact that Sepulveda issued payments to Abadia on behalf of Transportes Duque is material; (3) Sepulveda's personal knowledge of his actions is more probative than any other evidence; (4) the general purposes of these rules and the interests of justice will best be served by admission of his declaration; and (5) Flota and Fireman's Fund have each had an opportunity to question Sepulveda. The disputes regarding whether it is a sworn statement under Colombian law and whether it was refuted by his later statement are relevant to the weight and probative value of the declaration rather than its admissibility. This assumes that Sepulveda remains unavailable and that there will be no objection by Fireman's Fund to the later contradictory statement issued by Sepulveda to Flota.

### 3. *Deposition Testimony of Fernando and Camilo Bautista.*

■ Fireman's Fund argues that the hearsay statements of the Duques and Sepulveda as reported in the testimony of each of the Bautistas, are admissable under Fed.R.Evid. 804(b)(5), 803(24), 804(b)(3), and 801(d)(2)(E). The Bautistas' statements concern the Duques' intent to obtain false Flota bills through a contact in Buenaventura, Abadia, and is either in the form of testimony that: (1) the Duques discussed directly with, or in the presence of the Bautistas, that Sepulveda was to make, or had made, such contact; and (2) Sepulveda communicated to, or in the presence of, the Bautistas that he had made such contact. The statements are offered to prove that Flota was involved in the conspiracy through its agent Abadia because Abadia provided the conspiracy with blank Flota bills of lading in order to facilitate the fraud on FABC. The statements are inad-

**2.** In light of this determination, there is no need for a factual hearing to determine the reasonableness of Fireman's efforts.

missable on this point, however, because the connection to Flota is too remote and tenuous.

■ Circumstantial guarantees of a hearsay statements trustworthiness are required for admissibility under the hearsay exceptions provided in Fed.R.Evid. 804(b)(5), 803(24), and 801(d)(2)(E). Assuming for the purposes of this motion that the Duques and Sepulveda will be unavailable to testify in this matter, their hearsay declarations are nonetheless not admissible against Flota. In addition to the statements' remote and tenuous connection to Flota, the Bautistas' testimony is self-serving, and the Duques had no personal knowledge of Abadia's alleged participation. *See Finn v. Consolidated Rail Corp.*, 782 F.2d 13 (1st Cir.1986) (self-serving, uncorroborated deposition testimony offered to prove truth of hearsay declaration inadmissible); *United States v. Stratton*, 779 F.2d 820, 829 (2d Cir.1985) (hearsay declarant must have personal knowledge of events reported to hearsay witness).

■ Likewise, the hearsay statements are not admissible against Flota as statements of a co-conspirator under Fed.R. Evid. 801(d)(2)(E). Fireman's Fund has not demonstrated by a "preponderance of the evidence" that "there was a conspiracy involving the declarant[s] and the non-offering party and that the statement was made 'in the course and in furtherance of the conspiracy.'" *Bourjaily v. U.S.*, —— U.S. ——, 107 S.Ct. 2775, 2779, 2778, 97 L.Ed.2d 144 (1987); *see also, United States v. Heinemann*, 801 F.2d 86, 95 (2d Cir.1986).

■ For the purposes of this motion I have considered the hearsay statements themselves as evidence in this determination. *See Bourjaily*, 107 S.Ct. at 2781–82. However, even assuming that the statements of both the deponents and the declarant were trustworthy and that the statements were sufficient to show that Abadia was a member of the conspiracy, I find that the facts that Flota bills of lading were obtained from Abadia and that Flota bills of lading were used in furtherance of the conspiracy are insufficient to establish that Flota was a member of the conspiracy. The statements cannot be admitted as evidence against Flota.

Likewise, the statements at issue are not admissible against Flota under Fed.R.Evid. 804(b)(3). Even assuming that the statements at issue were against the interests of the declarants and admissible against them, there is insufficient evidence to connect Flota to the conspiracy in order to support admissibility of the statements against Flota.

## B. Flota's Motion to Dismiss

Flota moves pursuant to Fed.R.Civ.P. 56 for partial summary judgment dismissing FABC's first, third, fourth, fifth and sixth causes of action and Fireman's Fund's first cause of action in its crossclaims. FABC and Fireman's Fund oppose Flota's motion.

FABC does not oppose Flota's motion regarding FABC's first cause of action.

■ FABC's third, fifth and sixth causes of action allege, respectively, that Flota was negligent in the way it distributed its blank bills of lading, guarded the stamps which validate bills of lading, and supervised its employees. Fireman's Fund's first cause of action also alleges that Flota was negligent. Flota moves for summary judgment in its favor on these causes of action on the grounds that it owed no duty to FABC.

In support of its argument Flota relies primarily on the standard set out in *Pulka v. Edelman*, 40 N.Y.2d 781, 390 N.Y.S.2d 393, 358 N.E.2d 1019 (1976). The *Pulka* court described one person's duty to control another and pointed out that "one example of a situation in which there is a duty to use care to control another's conduct is the master and servant relationship." *Id.*, 40 N.Y.2d at 784–85, 390 N.Y.S. 2d at 395, 358 N.E.2d at 1021. The duty in that example arose from the relationship of control between the defendant and the person who caused harm to a third person rather than the relationship between the defendant and the third person. Such a duty exists here. The expert affidavits submitted by Fireman's Fund and FABC,

indicating that the fraudulent Flota bills of lading were stamped with the genuine Flota stamps, are sufficient to raise an issue of fact regarding the possibility that an employee of Flota was involved in the conspiracy which harmed FABC. Affidavit of Jack A. Greenbaum in Opposition to Flota's Motion for Summary Judgment, Exh. 8; Maillet Affidavit, at Exh. G–H. Summary judgment in favor of Flota on the ground that it cannot be liable in negligence because it owed no duty to FABC must therefore be denied.

■ Likewise, Flota's motion for summary judgment dismissing FABC's fourth cause of action on the ground that FABC has no admissible evidence to support its allegations that Flota, through its employee, intentionally and willfully participated in the fraud committed against FABC must be denied. The expert affidavits regarding the use of Flota's stamp on the fraudulent bills of lading, Abadia's deposition testimony indicating that there were no thefts at Flota during the relevant time period and Sepulveda's statements indicating a relationship with Abadia, raise a sufficient issue of fact regarding Flota's employees' involvement to withstand this motion for summary judgment.

In sum, the evidence which is the subject of Fireman's Fund's motion *in limine* is inadmissible except for the statements signed by Sepulveda and Flota's motion for partial summary judgment is denied in its entirety.

SO ORDERED.